469 So.2d 1241 (1985)
TRUSTEES OF WADE BAPTIST Church
v.
MISSISSIPPI STATE HIGHWAY COMMISSION.
No. 54784.
Supreme Court of Mississippi.
May 22, 1985.
*1242 Arvis V. Cumbest, A. Scott Cumbest, Cumbest, Cumbest & Hunter, Pascagoula, for appellant.
F. Gerald Maples, Lowry M. Lomax, Moore, Maples & Lomax, Pascagoula, for appellee.
Before PATTERSON, C.J., and DAN M. LEE and ROBERTSON, JJ.
*1243 ROBERTSON, Justice, for the Court:

I.
The Trustees of the Wade Baptist Church appeal to this Court charging as unreasonably low a jury's damage assessment following the Mississippi State Highway Commission's taking of .26 acres used in the four-laning of State Highway 63. Specifically, the church argues that proper consideration was not given to the loss of parking area and damages resulting from loss of access from Highway 63 to the church property. We have carefully reviewed these and other points called to our attention and affirm.

II.
Today marks the second appearance of this case before this Court. When the matter was first tried, a jury award in favor of Wade Baptist was made in the amount of $5,500.00. We reversed because the trial judge had erroneously precluded the testimony of Wade Baptist's expert witness, Bob Stephens. See Trustees of Wade Baptist Church v. Mississippi State Highway Commission, 411 So.2d 761, 763 (Miss. 1982). On remand the case was heard de novo in the Special Court of Eminent Domain of Jackson County commencing on October 26, 1982. After three days of trial the jury again assessed Wade Baptist's damages at $5,500.00.
The premises of the Wade Baptist Church are located on a lot situated in the northwest corner of the intersection of Mississippi State Highways 63 and 614 in rural Jackson County, Mississippi. Highway 63 was a two-lane road until the Highway Commission decided to four-lane it from George County down to Highway 90 in Pascagoula. This widening of Highway 63 is what necessitated the condemnation and taking of .26 acres of the premises owned by Wade Baptist.
At the time of the taking, August 7, 1980, the .26 acres was roughly in the shape of a parallelogram and constituted the frontage of the church property on Highway 63. As reflected by photographs in evidence, the area was largely grassy and appears to have been used by Wade Baptist for parking and as an access area during Sunday morning services and other church activities. The maps indicate that the front door of the church appears to be set back approximately 165 feet from the nearest edge of the tract condemned, thus after the taking the church retains a front yard some 165 feet deep.
Prior to the taking, the right-of-way owned by the Highway Commission for Highway 63 did not allow access onto Highway 63 from the church property. In fact, however, church members did use the Highway 63 frontage as an access area without apparent interference. Primary access to the church property, however, has always been from Highway 614 to the south. As a result of the taking, this southern access entrance has had to be moved approximately 90 feet further west from the intersection. The adverse impact upon the value of the remaining property resulting from this access alteration is not apparent.
As a result of this condemnation, the church will lose some  perhaps as many as 50  parking spaces, given the way the property was originally laid out.
Estimates of the damage as a result of this taking varied widely. On the low side was the Highway Commission appraiser who estimated the damages occasioned by loss of the .26 acres and devaluation of what remained at $5,500.00. At the other extreme, there was one Wade Baptist appraiser, Glen Davis, who assessed the church's damage at $330,000.00.
At the conclusion of the evidence on October 28, 1982, the jury found that Wade Baptist had been damaged in the amount of $5,500.00. When interest as provided by law was added to said sum, the Special Court of Eminent Domain of Jackson County, Mississippi, on November 29, 1982, entered judgment in favor of Wade Baptist and against the State Highway Commission in the sum of $7,034.00.
*1244 In due course thereafter, Wade Baptist filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial, or, in the alternative, for a additur. On December 21, 1982, this motion was overruled. This appeal has followed.

III.
Wade Baptist argues that the trial judge was guilty of a gross abuse of discretion when he refused to order an additur. The primary bases for this argument are Wade Baptist's obviously correct view that the jury relied on the Highway Commission's appraiser, Ralph Klein, and its quite dubious thesis that Mr. Klein failed to give proper weight to Wade Baptist' loss of access and loss of parking.
We begin with the basics. Our constitution mandates that private property shall not be taken or damaged for public use except upon due compensation to the owner thereof. Miss. Const. Art. 3, § 17. Due compensation has two components: the value of the property taken and the damage, if any, to the remainder. Mississippi State Highway Commission v. McArn, 246 So.2d 512, 514 (Miss. 1971). Put another way, when a part of a larger tract is taken, the property owner is entitled to the difference between the fair market value of the whole tract immediately prior to taking and the fair market value of the remaining tract immediately after taking. Muse v. Mississippi State Highway Commission, 233 Miss. 694, 718, 103 So.2d 839, 849 (1958); Mississippi State Highway Commission v. Hillman, 189 Miss. 850, 866, 198 So. 565, 570-71 (1940).
Value used in eminent domain proceedings refers to the familiar appraisal and economic concept of fair market value. Eminent domain proceedings are against the property itself; they are in the nature of in rem proceedings. Evans v. Mississippi Power Co., 206 So.2d 321, 322 (Miss. 1968). Compensation must be based upon the property itself and the damages to its fair market value.
In this context we note Mr. Klein's testimony. Mr. Klein testified that he considered the three standard approaches to value, the income approach, the cost approach and the market data approach. See American Institute of Real Estate Appraisers, The Appraisal of Real Estate (6th ed. 1973). Relying primarily upon the cost approach by reason of the nature of the property involved, Mr. Klein gave his opinion that the fair market value of the entire property before the taking was $420,100.00. He then gave his opinion that the fair market value after the taking was $414,600.00. From this, simple mathematics produced "a rounded figure of $5500.00" as Mr. Klein's opinion of the damages incurred as a result of the taking of the .26 acres with which we are here concerned. The verdict suggests that the jury regarded as credible Klein's opinion.
Wade Baptist argues that Mr. Klein did not consider damages for loss of access to Highway 63. Wade Baptist calls to our attention two cases, Mississippi State Highway Commission v. Ray, 215 So.2d 569, 571-72 (Miss. 1968), and Mississippi State Highway Commission v. Null, 210 So.2d 661, 664-665 (Miss. 1968), wherein this Court has recognized the propriety of considering loss of access as an element of damages in an eminent domain case where the loss of access adversely affects value immediately following the taking.
To be sure, access is of value and its taking is subject to our eminent domain laws. Mississippi State Highway Commission v. Finch, 237 Miss. 314, 321, 114 So.2d 673, 675 (1959). Our original case on this subject, Muse v. Mississippi State Highway Commission, 233 Miss. 694, 706, 714, 103 So.2d 839, 843, 847 (1958), recognizes that, even though a property owner's access is altered, the jury may find that the owner was not damaged by the taking of the right of direct access to the main lanes of a highway if the frontage roads afforded reasonable access to the remaining property of the owner.
This test of reasonableness, however, may not be separated from the general *1245 damage inquiry which is inherently one of fact. If the restriction or alteration of access from subject property to a public road diminishes the value of the property remaining after the taking, then such loss of access becomes a compensable element of damage. On the other hand, where access is merely altered, and where the alteration in no substantial way affects detrimentally the value of the property remaining after the taking, no damages should be awarded.
The point is that neither access nor parking are attributes or capabilities of land subject to separate valuation in eminent domain proceedings. They may be considered only insofar as they affect the value of the property remaining after the taking. We find Mr. Klein's testimony to have been wholly consistent with these premises.
Each case necessarily turns on its own facts as to whether the alteration of access has indeed damaged the remainder of the property. In the case at bar, there is no question but that Wade Baptist's access to Highway 63 has been altered. The evidence reflects that its primary access, however, was always from Highway 614 to the south. All that has happened as a result of the taking has been that the location of the church's access driveway has been moved approximately 90 feet further west on Highway 614 than what it was before the taking. A common sense view of the evidence, such as jurors are certainly entitled to bring to bear, suggests that this change in access would have little, if any, impact upon the value of the property remaining after the taking. While some loss of area where parking occurred has resulted, we find the loss of area is reflected in Mr. Klein's damage estimate and the jury's verdict. Whether or not the "parking" aspect of the area taken further diminished the value of the property as a whole was a question the jury resolved against Wade Baptist.
When all is said and done, our review of the entire trial record leaves us convinced that the trial judge acted well within his discretion when he denied Wade Baptist's post-trial motion for an additur, or, in the alternative, for a new trial on the question of damages. See, Mississippi State Highway Commission v. Antioch Baptist Church, Inc., 392 So.2d 512, 515 (Miss. 1981). The assignment of error on this point is denied.

IV.
Wade Baptist next argues that the Highway Commission put evidence before the jury regarding adjoining property that Wade Baptist had acquired after the time of the taking  which eliminated certain elements of damage the church attempted to prove. The admission of such evidence regarding property acquired after the time of the taking is contrary to our law, a point the Highway Commission freely concedes. See Leflore v. State Highway Commission, 390 So.2d 284, 286 (Miss. 1980) (damages are to be assessed as of the time of the taking); Jackson Municipal Airport Authority v. Wright, 344 So.2d 471, 473 (Miss. 1977) (same); Mississippi State Highway Commission v. Hemphill, 253 Miss. 507, 514-15, 176 So.2d 282, 287 (1965) (same); Pearl River Valley Water Supply District v. Brown, 254 Miss. 685, 692-695, 182 So.2d 384, 385-386 (1966) (same); Pearl River Valley Water Supply District v. Wood, 252 Miss. 580, 595, 172 So.2d 196, 202 (1965) (same).
Wade Baptist presses upon us that there "were repeated questions concerning ownership of the adjacent property north of the Church property." Brief for Appellant at 10. This is not wholly accurate. The jury was never expressly informed that the church, at some time subsequent to the taking, acquired the adjoining property  but the fact of such acquisition was implied in several instances. The issue under this assignment of error is whether the jury was impermissibly prejudiced by "suggestions" or "implications" made at trial, rather than being a question of whether certain evidence was admissible.
*1246 At trial, in response to the Highway Commission $5,500.00 estimate of the damage, Wade Baptist offered and elicited extensive speculative testimony regarding how the church's value (as opposed to the land's value) would be diminished by this taking. This testimony ranged from the suggestion that, if the building burned, the church would need a zoning variance in order to rebuild because of the diminution of its lot size, one the one hand, to opinions that future collection-plate earnings would be less because membership would decrease due to the loss of some parking space and the church would ultimately go broke, on the other.[1] This future injury damage offered by Wade Baptist was obviously premised upon the church's being "locked in" to the 1.81 acre lot they had after the taking.
The Highway Commission takes the approach of: "Wade Baptist opened the door by speculating about future damages premised upon the church being limited to its original lot, therefore, the Highway Commission is allowed to prove that such speculation is patently false because the church has acquired other adjoining property which negates the possibility of such damages." In short, the Highway Commission contends that, even if the "suggestions" were error, they were invited error.
Every time the Highway Commission posed the question of who owned adjoining property (at the "current time" as opposed to the "time of the taking"), the trial judge sustained Wade Baptist's objection to the question so that no answer to this inquiry was ever put before the jury. Wade Baptist had full opportunity to cure when, at the conclusion of an extensive out-of-the-presence-of-the-jury conference, it moved the court to instruct the jury that at the time of the taking Wade Baptist did not own any adjoining property. The Highway Commission responded by offering to stipulate to that fact. Wade Baptist then  realizing that it was implicit in such a jury instruction that the church presently owned adjoining property  attempted to withdraw the motion. The Highway Commission opposed any such withdrawal of the motion.
After the trial judge inquired of Wade Baptist specifically how the church wanted the jury instructed, Wade Baptist's counsel replied: "All right. I withdraw it, Your Honor," and the jury was not so instructed. Given this situation
the trial judge did everything he was requested to do and he did not commit error as claimed... .
 Cox v. Mississippi State Highway Commission, 386 So.2d 1107, 1108 (Miss. 1980).
Since the issue contained in this assignment of error is not one of the jury receiving inadmissible evidence, but rather one of prejudicial "suggestion", the matter really devolves to one of whether the trial judge abused his discretion in refusing a mistrial and deciding instead that corrective instruction or sustained objections ameliorated any undue prejudice. See Copiah Dairies v. Addkison, 247 Miss. 327, 339, 153 So.2d 689, 694 (1963) (matter rests within the sound discretion of the trial court). Given the fact that every objection made by Wade Baptist was sustained so that the jury was never expressly informed that Wade Baptist owned the property, and that the church refused to join in the stipulation that would have clarified the matter, we hold that the trial court did not abuse its discretion in refusing to grant a mistrial.

V.
At the commencement of the trial, the jury was taken to the Wade Baptist property and given a thorough tour. Late in the trial, Wade Baptist offered for the viewing of the jury a video tape depicting the church property. The Highway Commission objected, and the trial judge refused to *1247 allow the showing of this videotape. Wade Baptist assigns this ruling as error.
Wade Baptist urges that the videotape should have been shown to the jurors for the purpose of "refreshing their minds". It is never made clear just why this would have been necessary or beneficial in view of the fact that the jury had had an actual view of the property and the further fact that several large color photographs of the property were offered into evidence. This is particularly so in that the videotape was made approximately two weeks prior to trial  October of 1982  and not in any temporal proximity to the August 7, 1980, date of taking.
Obviously, an actual viewing of the property was far more beneficial to the jury than even the most fairly prepared videotape would have been. Indeed a viewing of the premises is authorized by statute Miss. Code Ann. § 11-27-19 (1972) and, while discretion is vested in the trial court regarding the matter, we accept as a matter of common sense that it is the better practice to allow an actual jury view. Barrett v. State Highway Commission, 385 So.2d 627, 628 (Miss. 1980); see also, Smith v. Mississippi State Highway Commission, 423 So.2d 808, 813-816 (Miss. 1982).
We recognize that properly qualified and authenticated videotapes are often quite valuable aids to the trier of facts and they may be used in evidence in the courts of this state. Cf. Metropolitan Life Insurance Co. v. Wright, 190 Miss. 53, 199 So. 289, 291 (1940). Where properly qualified and authenticated and not redundant, we welcome them. On the other hand, the trial judge is vested with a certain discretion in matters such as this and where, as here, the trial judge has allowed the jury an actual viewing of the property, it is difficult to conceive of how a videotape could have added anything. This assignment of error is rejected.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, SULLIVAN and ANDERSON, JJ., concur.
NOTES
[1] This evidence is quite speculative and is of doubtful admissibility. Mississippi State Highway Commission v. Stout, 242 Miss. 208, 220, 134 So.2d 467, 471 (1961), although for reasons made apparent from the procedural posture of the case the point is not pressed here.