488 So.2d 782 (1986)
MISSISSIPPI STATE HIGHWAY COMMISSION
v.
FRANKLIN COUNTY TIMBER COMPANY, INC., et al.
No. 55471.
Supreme Court of Mississippi.
May 14, 1986.
*783 Walter Brown, Natchez, for appellant.
H.B. Mayes McGehee, W. Hollis McGehee, II, McGehee, McGehee & Torrey, Meadville, for appellees.
Before PATTERSON, C.J. and DAN M. LEE and ROBERTSON, JJ.
ROBERTSON, Justice, for the court:

I.
This eminent domain appeal arises out of a Franklin County jury's acceptance of a sawmill operator's hotly disputed proof that a highway right-of-way taking would put him out of business. Following less than amicable trial proceedings, the jury assessed Owner's damages at $350,000.00, and that in turn has been followed by this less than amicable appeal. For the reasons explained below, we affirm.

II.
Franklin County Timber Company, Inc. (sometimes hereinafter "Owner") is a Mississippi corporation having its principal place of business in Franklin County, Mississippi. Owner is in the sawmill business and employs about twenty-two people. The principal managing officers of the company are Messrs. Eddie Carter and Les Johnson. The property, which is the subject of this proceeding, has since about 1944 been used exclusively for the operation of a sawmill. Its highest and best use is as a sawmill.
Owner's sawmill property is bounded on the south by U.S. Highway 84 and 98 and Wells Creek; on the northeast by property belonging to Georgia Pacific Corporation; on the north and northeast by Illinois Central Railroad; and on the east by the "Old M.S. Whitehead Subdivision"; all within the northwest quarter of Section 19, T6N, R1E, Franklin County, Mississippi. The property contains 21.65 acres in all, 4.2 acres of which is unusable due to the terrain or other impediments. Owner argued at trial, supported by most of its witnesses, that the plant has operated on all the remaining 17.37 acres.
The Mississippi State Highway Commission (hereinafter "Highway Commission") filed on January 26, 1983, an application for eminent domain against the property of Franklin County Timber Company in the Special Court of Eminent Domain of Franklin County, Mississippi. Miss. Code Ann. § 11-27-3 (1972). In its application the Highway Commission sought to acquire, in connection with State Project XX-XXXX-XX-XXX-XX, lands totaling 11.70 acres either for a permanent right-of-way or a ten year temporary easement.
Owner had purchased the property from R.B. "Dunk" Wallace on September 28, 1979, for $900,000.00. Of this total purchase price, $250,000.00 was for rolling stock, leaving $650,000.00 for the land and permanent improvements. Since the purchase, $100,000.00 of improvements and repairs have been made to the property; $25,000.00 *784 of which could be allocated wholly to the improvements.
Pursuant to the provisions of Miss. Code Ann. § 11-27-83 (Supp. 1985), the court appointed Hall Wilson to make an independent appraisal of the property. In his report filed with the court on February 7, 1983, and amended and refiled on May 20, 1983, the appraiser valued the property at $135,000.00 before and at $71,200.00 after for a difference in compensation due of $63,800.00.
In its case in chief the Highway Commission described the taking. Glenn Beasley, an employee of the Highway Commission, testified that the Highway Commission would acquire a permanent right-of-way on 6.57 acres of the property and a temporary easement which would last for ten years on 5.13 acres of the property. The temporary easement is for the purpose of constructing and rerouting Wells Creek. On the reversion only .86 acres will be readily accessible to Owner, as the other portion would be across the creek. Access to the isolated area would require the construction of a bridge that could cost $100,000.00. Buildings would also be taken that are on the temporary easement.
The Highway Commission's witnesses insisted that the sawmill could continue profitable operations after the taking. Joe Long, an MAI called as an expert witness for the Highway Commission, testified that the before value of the property was $290,700.00 and the after value would be $208,400.00 for a difference in compensation due of $82,300.00. Dan Bland gave a before value figure of $280,285.00 and an after value figure of $195,270.00 for a difference of $85,015.00. Jay Dilmore, another expert and staff appraiser employed by the Highway Commission, testified that the property's present value is $291,506.00 and its after value will be $199,991.00 for a damage value of $91,515 due Owner.
Owner's witnesses gave much higher damage opinions, reflecting their view that the taking would destroy the utility of the remainder for sawmill operations. Eddie Carter, one of the co-owners, placed a before value of $574,944.00 and an after value of $114,430.00 on the property. R.B. "Dunk" Wallace, the former owner and present holder of a deed of trust to secure the purchase price indebtedness, placed a before value of $501,250.00 and an after value of $99,000.00 on the property. He also testified that the property is suitably adapted for sawmilling purposes because of its location in the Homochitto National Forest from whence it gets its supply of timber.
Wallace described the sawmill as a modern, all electrically operated sawmill and one of two sawmills in the State of Mississippi cutting timbers this large. This mill is constructed out of steel and concrete, with two floor levels of 7100 square feet of concrete on each level or a total of 14,200 square feet of concrete. The upper floor and roof are supported by steel beams, which are embedded in the concrete and can't be moved. The electrical wiring and control panels were a major part of the costs of the building and can't be removed without damaging the building. The sawmill equipment and machinery are also affixed to the concrete and building itself and can't be removed without permanent damage to the building.
There is also located on the property a sorting shed or green lumber mill building, maintenance shop, equipment supply or storage building, office building which is a trailer with offices in each end with a steel shed constructed over the office, and an asphalt parking area for employee and customer parking. In front of the maintenance shop there are gasoline pumps, two 500 gallon and two 1000 gallon underground storage tanks.
Fleet Lofton, another sawmill operator who owns an identical sawmill as that on the subject property, placed a before value of $550,000.00 and an after value of $114,000.00 on the property. Lamar Hooker, a real estate appraiser, using comparable sales figures of other sawmill property, testified that the property was worth $503,000.00 before the take and worth only $108,000.00 after the take.
*785 The jury viewed the subject property at the conclusion of all the testimony and returned a verdict of $350,000.00 as compensation due Owner. The trial judge adjusted the verdict so returned after adding interest at the legal rate minus $82,100.00 deposited by the Highway Commission with the court. The Highway Commission, feeling aggrieved, appeals to this Court.

III.

A.
Franklin County Timber Company is entitled to due compensation for the present taking. Due compensation has two components: the value of the property taken and the damage, if any, to the remainder.
Put another way, when a part of a larger tract is taken, the property owner is entitled to the difference between the fair market value of the whole tract immediately prior to taking and the fair market value of the remaining tract immediately after taking. Muse v. Mississippi State Highway Commission, 233 Miss. 694, 718, 103 So.2d 839, 849 (1958); Mississippi State Highway Commission v. Hillman, 189 Miss. 850, 866, 198 So. 565, 570-71 (1940).
Trustees of Wade Baptist Church, 469 So.2d 1241, at 1244. In accord, Emmerson v. Miss. State Highway Comm., 208 So.2d 441, 442 (Miss. 1968). Cf. Miss. State Highway Commission v. Hillman, 189 Miss. 850, 198 So. 565, 571 (1940).
The just compensation in cases involving a partial taking is generally the value of the part taken plus all the damages which the residue of the property suffers, including a dimunition in the value of the remainder ... Anything less than the foregoing would encroach upon the constitutional guarantee of just compensation. Mississippi State Highway Commission v. Colonial Inn, Inc., 246 Miss. 422, 432, 149 So.2d 851, 856 (1963).
These legal definitions have long been regarded as wholly consistent with the familiar appraisal and economic concept of fair market value. Pearl River Valley Water Supply District v. Wood, 252 Miss. 580, 596, 172 So.2d 196, 203 (1965). Eminent domain proceedings are against the property itself; they are in the nature of in rem proceedings. Trustees of Wade Baptist Church, 469 So.2d at 1244; Evans v. Mississippi Power Co., 206 So.2d 321, 322 (Miss. 1968). Compensation must be based upon the property itself and the damages to its fair market value.

B.
In this context, we note the Highway Commission's challenge to the use by Owner's witnesses of long term leases in the nearby town of Bude as "comparables". Of course, one of the three standard approaches to the determination of fair market value is the market data approach. Trustees of Wade Baptist Church v. Mississippi Highway Commission, 469 So.2d 1241, 1244 (Miss. 1985). Transactions regarding properties similar to that being taken are thought highly relevant to the question of the fair market value of the property being taken. It is an accepted and established appraisal practice to rely on such transactions commonly called comparable sales. The point for the moment is that there is no need for a particular transaction to have been identical in every respect to the property in issue for it to have relevance. At the extreme, of course, a comparable might be totally discredited if it is shown to have been totally different from the property being taken. On the other hand, the trial judge has a wide area of discretion  comparable to the appraiser's  in allowing testimony regarding comparable sales. Liberal cross-examination should be allowed the adverse party to permit testing of the true utility of the comparable.
Here we find the Highway Commission challenging the use as a comparable of the sale of a long term leasehold interest in a sawmill in Bude. The lease had twenty years to run with an option to renew for an additional twenty years. Because the transaction is a lease and not a sale, we are *786 urged to disqualify it from consideration. This ignores the economic reality that the value in exchange of a long term leasehold interest may not vary materially from the value of the fee. Certainly the two types of the transactions are not so inherently different so as to preclude consideration of the long term lease at all. Of course, the Highway Commission was entitled to bring out the fact that the Bude transaction was a lease and not a sale and to try to show that for this reason it was not a bona fide comparable. The obvious trap this put the Commission in, however, was that if anything a leasehold interest would be thought to have less value than a sale which would only go to suggest that the value of the property being taken here exceeded that of the sawmill in Bude. There was no error in the trial judge's ruling here.

C.
The Highway Commission further challenges the prerogative of three of Owner's witnesses to give opinions regarding value. These were Eddie Carter, one of the co-owners of the premises in question, R.B. "Dunk" Wallace, a former owner and holder of a deed of trust to secure the purchase price indebtedness, and Fleet Lofton, the owner of a very similar sawmill. There is no talismanic test which might mechanically be applied to determine whether one can give an opinion regarding value in an eminent domain proceeding. Certainly we have no rule which limits such opinion testimony to those formally qualified as expert appraisers. What  and all  is necessary is that the witness establish his substantial familiarity with the fair market values of properties of the type in issue and a like familiarity with the property in issue. Pearl River Valley Water Supply District v. Wood, 252 Miss. 580, 598, 172 So.2d 196, 204 (1965); Mississippi State Highway Commission v. Meridian Brick Company, 245 Miss. 349, 355-56, 147 So.2d 302, 304 (1962); Mississippi State Highway Commission v. Strong, 240 So.2d 756, 763-64, 129 So.2d 349, 350 (1961).

D.
The Highway Commission charges that the trial judge committed error in allowing the original purchase price of the property being taken to be received into evidence without it being broken down as to real and personal property, goodwill, timber contracts and other components and the failure of the witnesses to consider all of the land in their before and after valuations. Here the Highway Commission confuses admissibility with credibility. The complained of evidence offered by Owner was in our view admissible. It was certainly the Highway Commission's prerogative to make every effort to wholly discredit this testimony through vigorous cross-examination on the precise points now said to have precluded admissibility at the outset. Our review of the record makes it clear that the Highway Commission did indeed take full advantage of this opportunity for cross-examination. That the jury apparently rejected the Highway Commission's view regarding the value of this evidence and its credibility in no way affords the Highway Commission any relief on this appeal.

E.
Next, the Highway Commission argues that the trial judge erred in not requiring the Owner's appraisal witnesses to consider all the land in their before and after valuations. In this context we regard it important that there were only 17.18 acres usable land owned by Franklin County Timber before the taking, after excluding that part within Wells Creek, the small branch on the west, the public road, the narrow neck in the northwest corner and the wet area where the spring head is located. The Highway Commission insists that it is taking 6.57 acres for permanent easement and that after ten years exclusive use by the Highway Commission of the temporary easement, there will come back to Owner 5.13 acres which added to its original acreage of 21.65 acres, less the permanent take, will give Owner 15.08 acres that must be valued whether within *787 Wells Creek, branch, public road or whatever.
We find that Glenn Beasley, the Highway Commission Engineer, testified that the channel of Wells Creek would be changed and moved up to the north into Owner's property; he said the banks of this creek are at least 20 feet deep, and the creek 30 feet wide at the bottom. After ten years exclusive use by the Highway Commission, at most, .86 acres will be north of the new channel of Wells Creek and all the rest of this 5.13 acres will be either within the creek, the soil gone from that area and the remainder cut off south of the new channel with no access unless a bridge is built across it. In this context there was no error in allowing Owner's expert witnesses to predicate their opinions on the assumption of 17.18 usable acres, an assumption, to be sure, wholly subject to cross-examination. See Emerson v. Mississippi State Highway Commission, 208 So.2d 441 (Miss. 1968).

IV.
We are presented three assignments of error which in combination constitute a broadside assault on the adequacy of the evidence to undergrid the jury's said-to-be-excessive damage award. As in the case of any other jury determination of damages, we are not at liberty to order a new trial unless the verdict is so at variance from the evidence as to shock the conscience of the Court. Except where the verdict is grossly excessive and evinces bias, passion and prejudice by the jury, we have no authority to require the prevailing party to submit to a second adjudication. Trustees of Wade Baptist Church v. Mississippi State Highway Commission, 469 So.2d 1241, 1245 (Miss. 1985); Mississippi State Highway Commission v. Baker, 241 Miss. 738, 133 So.2d 277, 278-79 (1961); Mississippi State Highway Commission v. Ellzey, 240 Miss. 689, 128 So.2d 561, 562 (1961); Mississippi State Highway Commission v. Taylor, 237 Miss. 847, 116 So.2d 757, 759 (1959).
We are particularly loathe to disturb a jury's condemnation award where the jury has personally viewed the premises. Ellis v. Mississippi State Highway Commission, 487 So.2d 1339 (Miss. 1986); Mississippi State Highway Commission v. Turnipseed, 236 Miss. 764, 111 So.2d 925 (1959). We have gone so far as to suggest that, where the jury has viewed the property being taken, any substantial evidence in the record supporting the jury's damage assessment will preclude interference in this Court. City of Jackson v. Landrum, 217 Miss. 10, 63 So.2d 391 (1953).
As was stated in Mississippi State Highway Commission v. Terry, 288 So.2d 465, 466 (Miss. 1974)
We have said repeatedly that we cannot retry the case here nor can we substitute our judgment for that of the jury. In addition to hearing and observing the witnesses at first hand, the jury went upon the premises and there observed its various features, the location of the improvements and the extent and foreseeable effect of the proposed taking. The jury was not bound to accept the exact figures given by any of the experts. The opinions of the appraisers offered by the Commission as to the before and after values are, after all, opinions only and were to be considered by the jury with the opinions of the appraisers offered by the landowners ... the weight to be given their testimony was for the jury.
See also Miss. State Highway Comm. v. Crook, 282 So.2d 232, 236 (Miss. 1973).
In the end, there is no real dispute regarding land values. Indeed, the Highway Commission's appraisal witnesses attributed to the land a higher value than did Owner's witnesses. The core issue at trial was whether the taking would render the premises unsuitable for continued use as a sawmill. Where a partial taking renders the remainder unsuitable for continued use at the property's highest and best use, that loss becomes a significant component of owner's due compensation. Mississippi State Highway Commission v. Rogers, 271 So.2d 731, 734 (Miss. 1973); Mississippi *788 State Highway Commission v. Meridian Brick Company, 245 Miss. 349, 147 So.2d 302 (1962).
Franklin County Timber Company presented four witnesses whose opinion regarding before and after values reflected a further opinion that the taking would destroy the suitability of the property for sawmilling purposes. These witnesses were Eddie Carter, one of the co-owners, R.B. "Dunk" Wallace, a former owner who presently held a deed of trust on the premises to secure payment of the purchase price, Fleet Lofton, operator of a similar sawmill, and Lamar Hooker, an experienced and qualified real estate appraiser. In this setting, the fact that the Highway Commission adduced three expert appraisal witnesses at trial avails it nothing. Unless we are prepared to hold that the testimony of Owner's witnesses was inadmissible, we must perforce treat that testimony as evidence having sufficient credibility to render unassailable the verdict of the jury.
Underlying all is the sub silentio cry of a runaway jury, or, "home cooking", as it is sometimes called. The size of the verdict, the size of the damages assessment gives pause only if one doubts the validity of the jury's obvious conclusion that the property was rendered unsuitable for further economical operations as a sawmill. Any temptation on our part to disturb the verdict of the jury is checked by our perception that as often as not jurors seem to realize that condemnation awards are being paid out of the public coffers which, of course, are filled out of the taxpayers'/jurors' pockets. It is by no means an infrequent occurrence that the jury returns a verdict for the lowest possible amount, notwithstanding highly credible appraisal testimony of far greater values. See, e.g., Ellis v. Mississippi State Highway Commission, 487 So.2d 1339 (Miss. 1986); Trustees of Wade Baptist Church v. Mississippi State Highway Commission, 469 So.2d 1241 (Miss. 1985).
We have considered the other points raised by the Highway Commission and do not find discussion appropriate.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P. JJ., and HAWKINS, DAN M. LEE, PRATHER, SULLIVAN and ANDERSON, JJ., concur.