# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-CT-01308-SCT

*GULF SOUTH PIPELINE COMPANY, LP*

*v.*

*BLANCHE MARIE DOWNEY PITRE*

## <u>ON WRIT OF CERTIORARI</u>

| | |
|---|---|
| DATE OF JUDGMENT: | 06/26/2007 |
| TRIAL JUDGE: | HON. JOHN S. PRICE, JR. |
| COURT FROM WHICH APPEALED: | WARREN COUNTY SPECIAL COURT OF EMINENT DOMAIN |
| ATTORNEYS FOR APPELLANT: | LEANN W. NEALEY |
| | FRED EXZELL BOURN, III |
| | ROBERT C. GALLOWAY |
| ATTORNEY FOR APPELLEE: | DAVID M. SESSUMS |
| NATURE OF THE CASE: | CIVIL - EMINENT DOMAIN |
| DISPOSITION: | REVERSED AND REMANDED - 04/15/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1.     Gulf South Pipeline Company ("Gulf South") sought a 5.59-acre easement and right-of-way for a forty-two-inch pipeline through 115 acres of property owned by Blanche Pitre in Warren County, Mississippi.[1]  During trial in the Warren County Special Court of Eminent

---

[1]According to Gulf South's "Complaint to Exercise Right of Eminent Domain," the pipeline "shall be buried during construction to provide a minimum cover of not less than thirty-six inches . . . ."   Furthermore, as noted by Gulf South, the pipeline is "parallel to an existing high-voltage power line easement" on the subject property.

Domain, Gulf South's appraiser, Brent Johnston, valued the property to be taken at $38,250[2] and opined that the remainder of the property would be unaffected. Johnston testified (1) that no severance damages were due because of the pre-existing presence of a power line; (2) that, "because of the 700-foot distance between the pipeline and the other buildings," no other damages arose; and (3) that "in the market I found no difference between property with a pipeline and not."[3]

¶2. Pitre's appraiser, James Hamilton, opined that total damage to Pitre's property, including damage to property not taken, was approximately $175,000. Hamilton used sales comparables for the property actually taken and valued it at $5,000 per acre. However, regarding damage to property not taken, Hamilton opined that such property would suffer an additional fifteen percent diminution in value, the shop would suffer an additional thirty percent diminution in value, and the house would suffer an additional twenty percent diminution in value. Hamilton testified that, in formulating his opinion for the additional diminution in value to the remainder property, shop, and house, he could not find sales

---

[2]Using sales comparables, Johnston determined that the property actually taken was worth approximately $6,000 per acre.

[3]Sales comparables relating to properties through which a gas line passed, used by Johnston and referenced in his deposition, were excluded by the trial court and marked for identification only. Specifically, the trial court stated:

> [t]he Rules of Civil Procedure . . . have a duty to timely and seasonbl[y] supplement discovery. The comparables that Mr. Johnston was getting ready to testify to yesterday . . . were supplied to [counsel for Pitre] on June 8th, which was a Friday afternoon. This trial has been set for June . . . 13th for some time. It's been continued several times. I find that that is not . . . timely and seasonable . . . . So, therefore, any testimony regarding those comparables is hereby disallowed.

comparables. Thus, he failed to offer evidence that he: (1) had applied established and reliable principles or methods; (2) had relied on accepted publications or other authoritative appraisal texts; or (3) otherwise had utilized underlying facts or data to support his opinion as to the remainder. Hamilton maintained that:

> [j]ust about everything that we do is the opinion of the appraiser. And we either back it up with education and all of the information that we can get to arrive . . . at our opinion. But when it . . . gets down to it, it's our opinion as to . . . value . . . .

In Hamilton's estimation, "[i]t's tainted property. It's got that gas line on it, and people are going to be scared of it."

¶3.     Over objection, the trial court admitted Hamilton's testimony regarding diminution to the remainder, despite his earlier testimony that the reliability of an appraisal is dependent upon (a) the availability of comparable sales data; (b) the verification of the sales data; (c) the degree of comparability or extent of adjustment necessary for time differences; and (d) the absence of nontypical conditions affecting the sales price. Following a jury verdict in favor of Pitre for $175,000, Gulf South moved for judgment notwithstanding the verdict, which was denied. On appeal, the Mississippi Court of Appeals affirmed. *See Gulf South Pipeline Co. v. Pitre*, 2009 WL 596007, at *1 (Miss. Ct. App. March 10, 2009). According to the Court of Appeals:

> [w]e cannot hold Hamilton's testimony to a strict *Daubert*[4] analysis because he was unable to find comparable sales to compute an after fair market value. No argument was made that Hamilton was not a qualified expert. Gulf South only challenges his method of calculating the after fair market value of the

---

[4]*See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).

property. We find that the trial judge, as the gatekeeper, did not err in allowing the jury to hear Hamilton's testimony.

*Pitre*, 2009 WL 596007, at *4.

## ISSUE

¶4.     This Court will consider:

Whether an appraiser can offer opinion testimony on diminution, or lack thereof, without utilizing any of the three recognized methods for determining the fair market value of real property.[5]

## ANALYSIS

¶5.     The Mississippi Constitution states that "[p]rivate property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof . . . ." Miss. Const. art. 3, § 17 (1890). "[T]he words 'or damaged' were added to the Constitution to secure [for] a private property owner . . . damages not covered by the actual taking." *Potters II*, 608 So. 2d at 1230 (citing *Parker*, 162 So. at 163). This Court has stated that "just compensation in cases involving a partial taking is generally the value of the part taken plus all the damages which the residue of the property suffers, including a diminution in the value of the remainder." *Miss. State Highway Comm'n v. Franklin County Timber Co.*, 488 So. 2d 782, 785 (Miss. 1986). In eminent-domain cases, "[t]he condemnor has the

---

[5]While not raised, but certainly applicable on remand, is Johnston's testimony on lack of diminution of the remainder. Johnston's testimony fails a *Daubert* analysis, as the evidence offered regarding comparable sales properly was excluded from jury consideration. Gulf South's evidence of diminution of value, or lack thereof, does not address "damages not covered by the actual taking." *Potters II v. State Highway Comm'n of Miss.*, 608 So. 2d 1227, 1230 (Miss. 1992) (citing *Parker v. State Highway Comm'n*, 173 Miss. 213, 219, 162 So. 162, 163 (1935)). In so holding, this Court makes no comment regarding whether the excluded comparable sales sufficiently constituted "properties similar to the one at issue in th[is] appraisal." *Rebelwood, Ltd. v. Hinds County*, 544 So. 2d 1356, 1360-61 (Miss. 1989).

4

burden of proving the value of the condemned property." ***Ellis v. Miss. State Highway Comm'n***, 487 So. 2d 1339, 1342 (Miss. 1986). "After a prima facie case has been made out by the condemnor, then, if the landowner expects to receive more compensation than that shown, he must go forward with the evidence showing such damage." ***Id***. (quoting ***Miss. State Highway Comm'n v. Crooks***, 282 So. 2d 232, 235 (Miss. 1973)).

¶6.     Three standards are accepted in determining fair market value for real property: (1) the cost approach, (2) the income-capitalization approach, and (3) the market-data or comparative-sales approach. *See* ***Rebelwood***, 544 So. 2d at 1360; ***Franklin County***, 488 So. 2d at 785. "These approaches do not, considered singly, establish value. Each rather is one approach to value, with the appraiser's estimate of value being, in the end, an opinion which is the product of a reconciliation of the indications yielded by the three approaches." ***Rebelwood***, 544 So. 2d at 1360. *See also* ***Adcock v. Miss. Transp. Comm'n***, 981 So. 2d 942, 947 (Miss. 2008) ("all three methods of valuation need not be considered in every appraisal, particularly those of non-commercial property"). The market-data or comparable-sales approach was used by the experts for both parties for the property actually taken, but not for the remainder. Using that approach, "the value estimate is predicated upon *prices actually paid in open market transactions for various properties similar to the one at issue* in the appraisal." ***Rebelwood***, 544 So. 2d at 1360-61 (emphasis added). Neither expert offered admissible market-data or comparable-sales evidence for the diminution, or lack thereof, in the value of the remainder.[6]

---

[6]Contrary to the dissent's assertion that this Court established by "judicial fiat" the accepted standards for real estate appraisers, this Court has merely adopted the industry

¶7. Mississippi Rule of Evidence 702 provides that:

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert . . . may testify thereto in the form of an *opinion or otherwise, if* (1) the testimony is *based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case*.

Miss. R. Evid. 702 (emphasis added). This Court has stated that "[u]nder the modified *Daubert* standard, the trial court must first determine whether expert testimony is *relevant* and, second, whether the proffered testimony is *reliable*." *Adcock*, 981 So. 2d at 946-47 (emphasis added). No serious question arises as to relevancy. Certainly, the value of property is relevant in an eminent-domain taking. *See Tunica County v. Matthews*, 926 So. 2d 209, 214 (Miss. 2006). In determining reliability, the:

> [f]actors to consider may include "whether the theory or technique can be and has been tested; whether it has been subjected to peer review and publication; whether . . . there is a high known or potential rate of error; whether there are standards controlling the technique's operation; and whether the theory or technique enjoys general acceptance" within the expert's particular field.

*Adcock*, 981 So. 2d at 947 (quoting *Miss. Transp. Comm'n v. McLemore*, 863 So. 2d 31, 37 (Miss. 2003)).

¶8. Under Rule 702, "trial courts are charged with being gatekeepers in evaluating the admissibility of expert testimony." *Watts v. Radiator Specialty Co.*, 990 So. 2d 143, 146 (Miss. 2008) (citation omitted). In short, "[t]he trial judge has the sound discretion to admit

---

standard, to be followed as a prerequisite to offering opinion testimony. Without coincidence, that industry standard is also the "statutorily-authorized" standard. *Rebelwood*, 544 So. 2d at 1360. The dissent's suggestion that this Court has dictated the methodology is not supported by the precedent followed by the courts of this State for years.

or refuse expert testimony; an *abuse of discretion standard* means the judge's discretion will stand unless the discretion he used is found to be arbitrary and clearly erroneous." ***Troupe v. McAuley***, 955 So. 2d 848, 856 (Miss. 2007) (quoting ***Poole v. Avara***, 908 So. 2d 716, 721 (Miss. 2005)) (emphasis added). However, merely speculative expert opinions should not be admitted. *See* ***Edmonds v. State***, 955 So. 2d 787, 792 (Miss. 2007) ("a court should not give . . . an expert carte blanche to proffer any opinion he chooses"); ***Matthews***, 926 So. 2d at 214 ("the trial court is vested with a gatekeeping responsibility to prevent the admission of expert testimony based on guess or conjecture"); ***McLemore***, 863 So. 2d at 41.

¶9.    Neither expert's testimony as to diminution of the remainder satisfies the requirements of our rules and established caselaw. Both failed to use time-tested techniques, supported by peer review or publications, and/or industry standards generally accepted within his field of expertise. Neither offered comparable sales, whether from Warren County, or any other county in this state. Hamilton offered no pretense that he was following any recognized method or procedure acceptable in the appraisal industry, and he admitted he was not relying on peer-reviewed articles or industry publications.[7] Furthermore, Hamilton's claim that no comparisons were available defies both judicial knowledge and the evidence excluded by the trial court. *See* footnote 3 *supra*. Pipelines run through numerous counties in Mississippi and have for more than half a century. Pipelines and power grids cross thousands of tracts of land in Mississippi. As such, finding comparable sales with utility or pipeline rights of way should present no impediment to applying the methods utilized in the appraisal industry

---

[7]Johnston's attempt to satisfy our Rule 702 concerns was properly excluded. *See* footnote 3 *supra*.

and previously accepted by the courts of this State. *See **Rebelwood***, 544 So. 2d at 1360; ***Franklin County***, 488 So. 2d at 785.

¶10.    Although there is no dispute that both experts were qualified appraisers, the lack of an acceptable methodology to formulate the subject opinions fails a ***Daubert*** analysis. *See* footnote 5 *supra*. Where an expert admits that no basis satisfying the accepted criteria for that profession exists for an opinion, the opinion should be excluded. *See **Edmonds***, 955 So. 2d at 792; ***Matthews***, 926 So. 2d at 214; ***McLemore***, 863 So. 2d at 41. Hamilton's testimony was purely subjective, little more than rank speculation. As Hamilton's opinion lacked reliability when examined through the lens of Rule 702, it should have been excluded. The Warren County Special Court of Eminent Domain abused its discretion by admitting the subject opinion testimony into evidence.

## CONCLUSION

¶11.    Accordingly, we reverse the trial court and the Court of Appeals and remand for a new trial consistent with this opinion.

¶12.    **REVERSED AND REMANDED.**

**WALLER, C.J., CARLSON, P.J., DICKINSON, LAMAR, CHANDLER AND PIERCE, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, P.J.**

**KITCHENS, JUSTICE, DISSENTING:**

¶13.    I do not agree that the trial court abused its discretion in allowing Pitre's expert, James Hamilton, to testify, and I would affirm the jury verdict in favor of Pitre, based in part on this Court's "long-standing history of not disturbing jury verdicts in eminent domain

8

proceedings." ***Trowbridge Partners, L.P. v. Miss. Transp. Comm'n***, 954 So. 2d 935, 944 (Miss. 2007).

¶14.    At the time of trial, Hamilton, Pitre's designated expert, had lived in Vicksburg for seventy-six years and had worked in the real estate business since 1954.  He obtained his broker's license in 1967 and his license to appraise both residential and commercial properties in the early 1990s.  Hamilton testified concerning numerous professional accomplishments over a long career in real estate and, quite correctly, was accepted as an expert witness by the trial court.  Notably, he had testified as an expert witness in at least forty eminent domain cases.

¶15.    With regard to his testimony, Hamilton used comparable sales to establish the fair market value of Pitre's property and determined that the 115-acre parcel was worth $5,000 per acre before the taking, an amount $1,000 per acre less than the fair market value established by Gulf South's expert appraiser.  However, Hamilton was unable to find a suitable comparable sale by which to measure the diminution in value of Pitre's remainder. Clearly, this was due to the unique characteristics of the property at the time of the appraisal. To that end, Hamilton testified,

> We can find land [comparable sales] when we go out just about anytime.  We can find house [comparable sales] about anywhere.  But you find houses with land with gas lines and pipelines on it and find sales of that type of property, that's kind of hard to do. . . .  If I could have found any, I would have.

Notwithstanding this uncontradicted testimony before the jury, the majority notes that Hamilton's assertion that no comparable sales existed defies judicial knowledge. Maj. Op. at ¶ 9.  However, when an expert witness's testimony defies judicial knowledge, which falls

far short of omniscience, our inclination should be to defer to the testimony of a qualified expert, rather than disregard it altogether. To be sure, the court's need for, and reliance on, expert witnesses is rooted in the reality that expert analysis and opinion usually exceed the knowledge and understanding of technical subject matter that is reposed in the minds of mere jurists and jurors.

¶16. Here, neither expert presented evidence of comparable sales to the jury to undergird their opinions regarding diminution of value of the parcel. Gulf South's expert testified that the diminution in the value of the land was zero, and Pitre's expert testified that the diminution in the value of the land amounted to 15% for the remainder of the parcel not taken by eminent domain, 20% for the house, and 30% for the barn, the barn being nearer the pipeline than the house. Hamilton testified that his opinion was based on his expertise, training, and certification in the field of real estate appraisal, and that "[j]ust about everything [appraisers] do is the opinion of the appraiser."

¶17. It is not for this Court to establish, by judicial fiat, the "standards . . . accepted in determining fair market value for real property." Maj. Op. at ¶ 6. We should not be in the business of dictating methodology to real estate appraisers, or to experts in any other field. It is they, and not we, who are the experts in their respective disciplines. The fact that neither party's expert based his opinion on comparable sales is telling. Such information is not always available, and when it is not, as here, qualified appraisers, such as these, may resort

to other appropriate and accepted methodology, including, but not necessarily limited to, their professional judgment, born of experience.[8]

¶18.  I would hold that the evidence presented by both experts was both reliable and relevant, and that it was the prerogative of the jury to weigh their relative credibility and the validity of their opinions.  That was done here, and the jury, having heard and considered the testimony of both experts, concluded that Pitre was entitled to $175,000 for the taking of his land.  Accordingly, I would affirm.

**GRAVES, P.J., JOINS THIS OPINION.**

---

[8]The "statutorily-authorized" standard mentioned by the majority and by this Court in ***Rebelwood, Ltd. v. Hinds County***, 544 So. 2d 1356, 1360 (Miss. 1989), is used by the State to determine the "true value" of a parcel for the sole purpose of assessing ad valorem taxes. Miss. Code Ann. § 27-35-50 (Rev. 2006).  Real estate appraisers in eminent domain cases, or otherwise, are not statutorily mandated to adhere to this method of appraisal. ***Id.***