534 So.2d 549 (1988)
Kenneth D. CROCKER
v.
MISSISSIPPI STATE HIGHWAY COMMISSION.
No. 58027.
Supreme Court of Mississippi.
November 23, 1988.
*550 J.M. Ritchey, Cain, Cain & Ritchey, Canton, for appellant.
Richard B. Schwartz, Schwartz & Associates, Jackson, for appellee.
Before DAN M. LEE, P.J., and ROBERTSON and GRIFFIN, JJ.
ROBERTSON, Justice, for the Court:

I.
Today's appeal is from a jury's compensation award made to a commercial property owner a part of whose frontage has been taken in a highway widening project. We are presented issues regarding the property owner's alleged moving expenses, his expert's proffer of a valuation opinion based on capitalization of rent loss, and the weight of the evidence of compensation due. Having carefully considered the matter, we affirm.

II.

A.
Kenneth D. Crocker (Crocker) is a gunsmith by trade. His business is at 1011 E. Peace Street, Canton, Mississippi, on State Highway 16. Crocker uses the building there located to practice his trade and conduct a sporting goods business. The Mississippi State Highway Commission (MSHC) has sought to widen State Highway 16 from two lanes to three. MSHC calls its project No. 79-0024-02-007-10. Crocker calls it a taking without just compensation.
The strip of land taken is a parallelogram, 53.8 feet along Highway 16, with a depth of 10.7 feet. It is .013 acres, or 575.66 square feet. Prior to the taking Crocker's lot was regular in shape, approximately .19 acres total. Post-taking, the lot will have approximately .177 acres, or 7738 square feet, remaining.
On the lot is a two story masonry block building. The downstairs is the gun shop, upstairs a presently (at time of trial) vacant three bedroom, one bath apartment. The downstairs is twenty-four feet wide and thirty-six feet deep, approximately 864 square feet. Along the east side of the building runs a fourteen by fifty foot covered carport. Also, there is parking in front, but it is limited to a few vehicles, and they must be "crammed in". After the taking, the southwest corner of a metal awning in front of Crocker's building will extend between four and five inches into the highway right of way. Also, the southwest corner of the building will be fourteen feet from the highway, the southeast corner 18 feet.
Highway department engineer, William S. Cobb (Cobb), explained the need for widening Highway 16. Importantly, Cobb testified the construction plat was amended to move a concrete island to the east to allow better access to the side of Crocker's building to park in the back. Cobb observed that the access to the back "will be adequate, it'll be tight, but he can get through there, yes".
Next, Kathy Bass Russell (Russell), real estate appraiser for the Mississippi State Highway Department, testified, after being qualified as an expert. Russell testified the building was in fair condition, that parking would be reduced to zero in front, but parking in back was accessible. Russell offered her opinion that the value of the property taken was $1200.00 and that damages to the remainder was $24,800.00. Put otherwise, Russell testified that the building had a before value of $43,200.00 (land $18,400.00 and building $24,800.00) and an after value of $17,200.00 (land $17,200.00 and building 0.00) for a due compensation of $26,000.00.
*551 Crocker offered Robert D. Morrow as an expert in real estate valuations. Morrow gave his opinion that before the taking Crocker's property had a fair market value of $57,000.00. After the taking that value had been reduced to $7,400.00. Morrow employed the three recognized approaches to fair market value. Under the market data approach, Morrow determined comparable property had a gross rent multiplier of 6.8 (fair market value of comparable property divided by its annual rental value) and that Crocker's shop and apartment could rent for $700/month, or $8400/year ($8400 X 6.8 = $57,120).
Under the replacement cost method, Morrow testified a contractor would rebuild for $72,000.00, and Marshal and Swift showed $73,200.00. The current building has an effective life of twenty years, and remaining useful life of thirty years, so forty per cent depreciation was taken. Thus, the building's before value under this method is $43,800.00 (note: this too is off  40% on $73,200 is $43,920; on $72,000.00 is $43,200). The land's before value is $13,200.00, for a total before value, again, of $57,000.00.
The third method Morrow used was the income approach, a reconstructed income statement. Here, all revenues and expenses were imputed, and the net capitalized. Morrow assumed gross income of $8,148.00/yr ($700/month rent minus vacancy loss) and expenses of $1,954.00/yr (fire insurance, taxes, repairs), for a net of $6,194.00/yr. Morrow then applied to that figure a capitalization "technique", for which there is no testimony, that shows before value of $56,500.00.
Reconciling the three approaches, Morrow's assessment of due compensation was $49,600.00 ($57,000.00 - $7,400.00 = $49,600.00).
Next, Morrow attempted to testify to what he claimed to be another method: capitalized rent loss. The County Court sustained MSHC's objection to this testimony. The court listened to a proffer on capitalized rent loss, which Morrow described as annual rent loss ($450/month: the value of the gun shop alone, not the apartment) "capitalized at 11% and we came up with the $49,000.00 that we mentioned".
Crocker testified on his behalf. He noted that five parking spots were being taken in front. He testified that the 7.9 feet on the west side of his property was not wide enough to drive through ("at least, I do not want my wife to try it."). The Court allowed Crocker's opinion as to the before ($65,000) and after ($47,000) value of the property: $65,000.00, determined by assuming a $500/month rent elsewhere, and Crocker said he would need about $66,000.00 in the bank now to earn $500/month, assuming a 9% interest rate. The $7,000.00 was determined by placing zero value to the building, paying inventory moving costs ($2,500.00), demolition ($5,500.00) and the cost of a new building ($50,000.00). MSHC objected to Crocker's proof of moving expenses, and the court ordered that testimony disregarded. However, the court allowed testimony as to building replacement to the extent it established a fair market value of the property.

B.
All of this occurred in the course of eminent domain proceedings commenced on June 5, 1986, when the Mississippi State Highway Commission filed its complaint in the County Court of Madison County, Mississippi. MSHC filed its statement of values on August 12, 1986, and an order granting it immediate possession was entered August 18, 1986. Trial was held October 13-14, 1986, during the course of which the jury personally viewed and inspected the property. In the end the jury found that Crocker would be damaged by the taking "in the sum of $26,000.00." Crocker timely moved for a new trial setting forth an assortment of grounds. By order entered October 23, 1986, the motion was denied. Crocker now appeals to this Court.

III.
Crocker complains that the Circuit Court erroneously excluded his evidence of what it would cost him to move his business *552 as a consequence of the taking. Crocker testified that in his opinion moving expenses of $2,500.00 would be incurred in moving inventory from his old building on the same lot. He correctly notes that our cases have held moving expenses admissible, not as a separate element of damage, but incident to the determination of the "before and after" value of the land. See Mississippi State Highway Commission v. McArn, 246 So.2d 512, 514 (Miss. 1971); Mississippi State Highway Commission v. Rogers, 242 Miss. 439, 136 So.2d 216, 217-18 (1961).
The issue is one of parking. Crocker says  and MSHC concedes  his front parking will be taken. But we are only talking about two to five spaces, depending on whose testimony is believed.
Here the matter is of no consequence for a preliminary factual question is whether it was necessary for Crocker to move his business at all. MSHC's witness Cobb testified that access to the building on the side and in the back would be adequate after the taking even though the front parking would be eliminated. Russell said Crocker would have to "redo the back to have adequate parking but that this could be done.[1] The jury was thus presented the proposition that it would not be necessary for Crocker to move his gun business to a new location. The verdict of the jury may only be interpreted as a resolution of that factual issue in favor of MSHC and against Crocker. The fact that the jury viewed and inspected the property renders that finding impregnable. There is no reversible error in the Circuit Court's refusal to allow Crocker's proffered testimony on moving expenses.

IV.
Crocker next assigns as error the County Court's exclusion of Morrow's expert opinion testimony that the value of the taking could be based upon capitalization of rent loss. In a proffer, Morrow testified that Crocker's fair market rental value for the entire building would be $700/month, or $8400/yr, but after the take the apartment could still be rented for $250/month. Therefore, Crocker would experience a $450/month loss ($5400/yr) for the remainder of the building. This loss, according to Morrow, should be capitalized at 11% for a total rent loss of $49,000.00. The Court sustained MSHC's objection to this testimony.
A few basics need be reviewed.
Eminent domain proceedings are in a practical sense against property; Mississippi State Highway Commission v. Franklin County Timber Co., Inc., 488 So.2d 782 (Miss. 1986); they are in the nature of in rem proceedings.[2]Trustees of Wade Baptist Church v. Mississippi State Highway Commission, 469 So.2d 1241, 1244 (Miss. 1985); Lennep v. Mississippi State Highway Commission, 347 So.2d 341, 346 (Miss. 1977); Evans v. Mississippi Power Co., 206 So.2d 321, 322 (Miss. 1968). Compensation must be based upon the property itself and the damages to its fair market value.
Fair market value is a value in exchange. It is the sales price that would be negotiated between one who wants to purchase and one who wants to sell. Green Acres Memorial Park, Inc. v. Mississippi State Highway Commission, 246 Miss. 855, 153 So.2d 286, 289 (1963). The seller must be one who desires but is not obligated to sell, and the buyer must be under no necessity of having the property. Mississippi State Highway Commission v. Hillman, 189 Miss. 850, 198 So. 565, 571 (1940). See American Institute of Real Estate Appraisers, The Appraisal of Real Estate 33-34 *553 (8th ed. 1983). Both the hypothetical arms length purchaser and his seller must have reasonable opportunity to become knowledgeable of all factors affecting value. Future profitability of the property is one factor our knowing and willing buyer would want to consider before establishing his asking price. And the same of a knowing and willing seller. All of this derives from the core assumption of economic life: that man is a rational, self-interested wealth maximizer, functioning in a world where, in relation to his wants, resources are limited.
We regard it as settled dogma within the appraisal profession that fair market value is established by reference to what has come to be known as the appraisal process. That process mandates careful consideration of not just one but three separate and distinct approaches to value; the income approach, the cost approach and the market data or sales comparison approach. See Trustees of Wade Baptist Church, 469 So.2d at 1241; Xerox Corporation v. City of Jackson, 328 So.2d 330, 331 (Miss. 1976); and American Institute of Real Estate Appraisers, The Appraisal of Real Estate, 41-44 (8th ed. 1983).
To be sure, the results obtained through the three approaches are not merely averaged; much professional expertise and judgment must be employed in the reconciliation process. The type of property whose valuation is sought and the quality of data available are among the more important variables in determining which approach should be given greatest credence. Where, as here, commercial, income producing property is at issue, the income approach is of considerable importance. This does not mean that the other two approaches may be ignored. Indeed, any expression of value solely by reference to but one of the three standard approaches to value should generally be taken with a grain of salt.
Commercial properties are bought and sold because of their income producing capacity, a fact within our judicial knowledge. See American Institute of Real Estate Appraisers, The Appraisal of Real Estate, 333 (8th ed. 1983). For this reason, and because the record reflects the availability of a plethora of income data, the income approach to value, sometimes referred to as the income capitalization approach, seems a credible, if not the most credible (though not exclusive), vehicle for ascertaining fair market value.
The value of the property in a market exchange is not necessarily enhanced because present management is efficient nor depressed because current management is incompetent. Of greater relevance is the income stream produced over a reasonable period of time under typical management. George Pacific Corp. v. Armstrong, 451 So.2d 201, 207 (Miss. 1984). That these matters are so, however, does not operate to preclude any projection of future income.
In considering Crocker's assignment, we must recall that Morrow was allowed to testify regarding the income approach to the fair market value of Crocker's property. His opinion was that the "before" value was $56,500.00, very much in line with his cost and market data values. What he is attempting through the disputed testimony is nothing more than a second income approach.[3] Moreover, his *554 projected rental loss of $49,000.00 is quite comparable to the yields of his other approaches to value. Crocker had already given one valuation analysis using an income approach to fair market value. We are not prepared to say that exclusion of this evidence abridged Crocker's substantial right to a fair trial. See Rule 103(a), Miss.R.Ev. The assignment of error is denied.

V.
Crocker next argues that the damage award made by the jury was so unreasonably low that it denied him just compensation and, accordingly, that the County Court abused its discretion when it overruled so much of his motion for a new trial on that ground.
Trial courts faced with such motions in eminent domain cases operate under familiar principles. The compensation award must neither be so high nor so low as to evince bias, passion or prejudice. Rather, it must be based upon competent facts, not conjecture, supposition or mere possibilities. Mississippi State Highway Commission v. Viverette, 529 So.2d 896, 900 (Miss. 1988); Mississippi State Highway Commission v. Hall, 252 Miss. 863, 879, 174 So.2d 488, 495 (1965).
Courts should be particularly loathe to disturb a jury's eminent domain award where, as here, the jury has personally viewed the premises. State Highway Commission of Mississippi v. Havard, 508 So.2d 1099, 1105 (Miss. 1987); Mississippi State Highway Commission v. Terry, 288 So.2d 465, 466 (Miss. 1974). We have gone so far as to suggest that, where the jury has viewed the property being taken, any substantial evidence in the record supporting the jury's damage assessment will preclude reversal. Mississippi State Highway Commission v. Franklin County Timber Co., Inc., 488 So.2d 782, 787 (Miss. 1986).
These premises before us, we find that the evidence reflects a variety of conflicting opinions regarding not so much the value of the property taken, but the damages to the remainder. MSHC's appraiser Russell gave a credible opinion that the damages due Crocker were $26,000.00. The fact that other witnesses called by Crocker gave a higher damage assessment is beside the point. The matter of valuation and damage assessment was submitted to the jury on proper instructions. The jury found that the damages sustained by Crocker as a result of the taking was $26,000.00. Under our familiar rules that determination is beyond our authority to disturb. Ellis v. Mississippi State Highway Commission, 487 So.2d 1339, 1342 (Miss. 1986); Mississippi State Highway Commission v. Baker, 241 Miss. 738, 133 So.2d 277, 278-79 (1961).
The assignment of error is denied.

VI.
Crocker has tendered two further assignments of error. We have carefully considered each and have concluded that neither merits either discussion or reversal. Each assignment of error not expressly discussed hereinabove is denied.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
NOTES
[1] Giving Crocker the benefit of the doubt, Russell's valuation opinion gave the building a zero value.
[2] We emphasize in the sentence above the words "in the nature of". Obviously, compensation is due persons. The right to just compensation secured by federal and state constitutions is held by persons. Indeed, little reflection is required to realize that the in rem idea is a fiction reflecting the reality that the taking of property effects a taking of an aggregate bundle of rights held by persons. See Johnson v. Franklin, 481 So.2d 812, 815 n. 3 (Miss. 1985). We find it useful to describe a condemnation action as "in the nature of in rem proceedings".
[3] The income approach is really two approaches: direct and yield capitalization. Direct capitalization is used to convert a single year's income expectancy into an indication of value. The Appraisal of Real Estate, 342 (8th ed. 1983). Yield capitalization is more complex, and is the discounted, present value analysis of future cash flows on the theory of a required profit or rate of return.

It should be noted that "not all appraisers agree on the appropriate income valuation techniques to be applied today, and there is ongoing debate concerning the relevance of traditional capitalization techniques and the validity of discounted cash flow analysis." The Appraisal of Real Estate at 347 (8th ed. 1983).
It is clear that the present worth of but one of the values in a property (i.e., land, improvements, reversionary interest) may be estimated separate from the whole. This is known as residual appraisal. Kinnard, Income Property Valuation, 238 (1971). Crocker through Morrow here has done nothing more than attempt to elaborate upon a subset of income capitalization's direct capitalization method: real property income as a residual. Morrow attempted to impute a lost rental income amount as a residual value, and then capitalize it to show its present value. While it may be a twist on the concept of residuals (because the method is particularly suited for rent producing properties, see McArdle's Estate v. City of Jackson, 215 Miss. 571, 579, 61 So.2d 400 (1952), it is not incorrect nor improper per se.