990 So.2d 200 (2008)
Bonnie Carter BURKS, Appellant
v.
MISSISSIPPI TRANSPORTATION COMMISSION, Appellee.
No. 2006-SA-01354-COA.
Court of Appeals of Mississippi.
January 8, 2008.
Rehearing Denied May 27, 2008.
Certiorari Denied September 11, 2008.
*201 John G. Corlew, Jackson, Katherine A. Smith, Megan Marthine Barber Conner, Jackson, attorneys for appellant.
James T. Metz, Joshua Daniel Freeman, attorneys for appellee.
Before MYERS, P.J., GRIFFIS and CARLTON, JJ.
CARLTON, J., for the Court.
¶ 1. This case comes before the Court from the Special Court of Eminent Domain, Winston County, Mississippi. On January 20, 2000, the Mississippi Transportation Commission (the Commission) filed a complaint to condemn 1.24 acres of land owned by Bonnie Burks in order to widen Highway 25 from two lanes to four. At the conclusion of the trial, Burks was awarded $132,500 as due compensation. Burks appeals. We find error and reverse and remand for a new trial.

FACTS
¶ 2. Prior to the taking at issue, Burks owned 3.34 acres of land situated on Highway 25 in Winston County. Burks lived on the land and for fourteen years operated a convenience store, MawMaw's Kountry Korner. On January 20, 2000, the Mississippi Transportation Commission filed an application to condemn 1.24 acres of Burks's property in order to widen Highway 25 from two lanes to four. The property was taken pursuant to the "quick take" provisions of Mississippi Code Annotated sections 11-27-81 to 11-27-91 (Rev. 2004).
¶ 3. Of the 1.24 acres taken were a gas station/convenience store, a covered porch, and a gravel parking lot with two driveways.[1] The remaining 2.1 acres contained *202 Burks's home, a covered carport, and some sheds. Prior to the taking, Burks's home sat 250 feet from the edge of the pavement on Highway 25. After the take, her house sat 162 feet from the pavement and approximately 100 feet from the right of way. Also, as a result of the taking, sixty-six pine trees, which acted as a buffer zone between Burks's home and the highway, were destroyed.
¶ 4. A jury trial was held to determine the amount of compensation due to Burks for the taking. At trial, the State and Burks offered expert testimony to aid the jury in its determination of just compensation.
¶ 5. The Commission's expert appraiser, Edmond Eslava, testified that the highest and best use of the property before the taking was a combination of highway commercial and residential. He was of the opinion that the highest and best use of the land after the taking was residential with "some potential for highway commercial." Utilizing the cost approach, Eslava valued the property at $161,769 before the taking and at $69,313 after the taking, the difference equaling $92,456 due Burks as just compensation.[2]
¶ 6. To determine the before value of $161,769, Eslava estimated the value of the 3.4 acres as if vacant or unimproved, and then added the depreciated value of the improvements. To estimate the value of the land, Eslava used four sales of vacant lots in Winston County which he deemed to be comparable to Burks's property. From these sales, Eslava reached the opinion that $4,000 per acre was an appropriate estimate for Burks's land, rendering a value of $13,360, or 3.4 acres at $4,000 per acre. Eslava then added the depreciated value of the improvements, which he estimated to be $148,409.[3] The sum of the land as if vacant ($13,360) and the depreciated value of the improvements ($148,409) equals the before value of $161,769.
¶ 7. To determine the after value of $69,313, Eslava estimated the value of the remaining 2.1 acres to be $8,400 (or 2.1 acres at $4,000), and added the value of Burks's home ($60,913). The sum of these two figures equals the after value of $69,313. Eslava found that the project did not adversely impact the value of the remaining 2.1 acres and Burks's home. The difference between Eslava's before value estimate ($161,769) and his after value estimate ($69,313) equals his estimate of $92,456 as just compensation due to Burks for the taking.
¶ 8. Burks's expert appraiser, Robert L. Crook, testified that the highest and best use of the property before the taking was for "highway and rural residence use." Crook testified that the highest and best use of the property after the taking was still for residential use. He was of the opinion that the increased proximity of the Burks's home to the highway made the property less desirable. Crook utilized the income approach, the sales comparison approach, and the cost approach to estimate the compensation due to Burks for the taking. Crook reconciled the before values under each respective approach and *203 arrived at a before value of $400,000.[4] Crook determined the after value of the property to be $50,000. Accordingly, Crook determined that the total compensation due to Burks was $350,000.
¶ 9. At the conclusion of the trial, the jury returned a verdict of $150,000.[5] Burks filed a motion for a new trial, which was denied by the trial court. After her motion for new trial was denied, Burks timely appealed to this Court. On appeal, Burks argues that the Commission failed to meet its burden of proof in establishing the fair market value of her property by (1) using comparable sales which were not, in fact, comparable to her property, and (2) failing to address damages to the remainder of her property. Finding the first issue dispositive, we do not address the second.

STANDARD OF REVIEW
¶ 10. The denial of a motion for a new trial is reviewed for abuse of discretion. Miss. Transp. Comm'n v. Highland Dev. LLC., 836 So.2d 731, 734(¶ 10) (Miss. 2002). "[I]n eminent domain cases, we must be satisfied that the award was not so excessive as to evince bias, passion, or prejudice and that it is supported by competent facts, not conjecture, supposition, or mere possibilities." Id. (citing Miss. State Highway Comm'n v. Viverette, 529 So.2d 896, 900 (Miss.1988)).

DISCUSSION

1. Whether the Commission failed to present competent evidence to establish fair market value.
¶ 11. Burks argues that the Commission did not present competent evidence of fair market value of Burks's property. She asserts that the Commission's appraiser, Eslava, valued her property using comparable sales which were not, in fact, comparable to her property. Burks also argues that Eslava incorrectly mixed the cost approach with the sales comparison approach.
¶ 12. In eminent domain cases, the condemning authority bears the burden of presenting competent evidence to establish the fair market value of the condemned property. Williamson v. Lowndes County, 723 So.2d 1231, 1232(¶ 3) (Miss.Ct.App.1998) (citing Ellis v. Miss. State Highway Comm'n, 487 So.2d 1339, 1342 (Miss.1986)). Fair market value is established by "careful consideration of not just one but three separate and distinct approaches to value; the income approach, the cost approach and the market data or sales comparison approach." Crocker v. Miss. State Highway Comm'n, 534 So.2d 549, 553 (Miss.1988) (citations omitted); see also Rebelwood, Ltd. v. Hinds County, 544 So.2d 1356, 1360 (Miss.1989) (an estimate of fair market value "is the product of a reconciliation of the indications yielded by the three approaches").

A. Mixing of Approaches
¶ 13. In estimating the fair market value of Burks's property, Eslava relied on the cost approach, and incorporated the sales comparison approach to arrive at a value for land as though vacant. Burks asserts that Eslava impermissibly mixed the cost approach with the sales comparison approach.
*204 ¶ 14. Burks cites Potters II v. State Highway Comm'n, 608 So.2d 1227, 1231 (Miss.1992) for the proposition that the three approaches may not be mixed and matched. The court in Potters II stated that "fair market value is an opinion best formed by competent persons pursuing not just one, but three separate and distinct but nevertheless interrelated, approaches to value: the cost approach, the market data or sales comparison approach, and the income approach." Id. Burks contends that the appraisal methods may not be mixed because they are "separate and distinct." We disagree.
¶ 15. We find no authority, in Potters II or otherwise, that supports the proposition that the three appraisal methods may not be mixed. While the approaches are referred to as "separate and distinct," they are also described as "interrelated." Id. Further, we note that, according to established appraisal principles and guidelines, the application of the cost approach necessarily requires the utilization of the sales comparison approach. See American Institute of Real Estate Appraisers, The Appraisal of Real Estate, 318 (10th Ed.1992) (stating that, under the cost approach, "[s]ite value can be estimated using various techniques: sales comparison, allocation, extraction[.]...") (emphasis added). Therefore, we find no merit in Burks's argument that Eslava impermissibly mixed the two approaches.

B. Comparable sales
¶ 16. Burks argues that, in estimating the value of her property as if vacant, Eslava used comparable sales which were not, in fact, comparable to her property because he used sales of lots located on "side roads" instead of lots located on a regularly traveled highway.
¶ 17. Where the sales comparison approach is applied, the sales used to establish value must be comparable to the property at issue. Howell v. State Highway Comm'n, 573 So.2d 754, 757 (Miss. 1990). The sales need not be comparable in all respects. Miss. Transp. Comm'n v. Fires, 693 So.2d 917, 923 (Miss.1997) (citing Miss. State Highway Comm'n v. Franklin County Timber Co., 488 So.2d 782, 785 (Miss.1986)). To be comparable to the subject land, a sale "must relate to and possess similar qualities to the land involved in the sale." Trowbridge Partners, L.P. v. Miss. Transp. Comm'n, 954 So.2d 935, 940(14) (Miss.2007) (citations omitted).
¶ 18. In Davidson v. Miss. Transp. Comm'n, 816 So.2d 393, 395-97 (7-17) (Miss.Ct.App.2001), we determined that sales of land in heavily developed areas were not comparable to the subject property, which was located in a sparsely developed area. In Howell, 573 So.2d at 758, sales of vacant lots were held to be incomparable to improved property with a highest and best use for commercial.
¶ 19. In the instant case, we find that the sales used by the Commission's appraiser to value Burks's property were not comparable. Our supreme court has taken judicial notice of the fact that "[c]ommercial properties are bought and sold because of their income producing capacity, a fact within our judicial knowledge." Crocker, 534 So.2d at 553. Prior to the taking, Burks had operated MawMaw's Kountry Korner on her property for fourteen years. Thus, her property possessed an income-producing capacity by virtue of its highway frontage. This fact was acknowledged by Eslava when he opined that the highest and best use of Burks's property before the taking was "highway commercial and residential." Yet, in estimating the value of Burks's land, Eslava used four sales of land not located on a highway, which did not reflect the commercial *205 value inherent in a property with highway frontage. Therefore, we find that Eslava's estimate of fair market value was not supported by competent evidence.
¶ 20. Additionally, we note that the inadequacy of Eslava's appraisal is exacerbated by his failure to use more than one approach in reaching his estimate of value, and more specifically, his failure to use the income approach, which is highly relevant where commercial property is at issue.[6] Although there is no requirement that all three approaches be utilized in every appraisal, an estimate of value derived from the consideration of only one approach is suspect. See Eller Media Co. v. Miss. Transp. Comm'n, 882 So.2d 198, 203(15) (Miss.2004); Rebelwood, 544 So.2d at 1360 ("These approaches do not, considered singly, establish value. Each rather is one approach to value, with the appraiser's estimate of value being, in the end, an opinion which is the product of a reconciliation of the indications yielded by the three approaches"); Crocker, 534 So.2d at 553. On this point, we find instructive the Crocker case, wherein our supreme court stated the following regarding the appraisal of property with income producing capacity:
The type of property whose valuation is sought and the quality of data available are among the more important variables in determining which approach should be given greatest credence. Where, as here, commercial, income producing property is at issue, the income approach is of considerable importance. This does not mean that the other two approaches may be ignored. Indeed, any expression of value solely by reference to but one of the three standard approaches to value should generally be taken with a grain of salt.

Crocker, 534 So.2d at 553 (emphasis added).
¶ 21. In conclusion, we find that the Commission failed to present competent evidence to establish the fair market value of Burks's property. Our holding is based on the following: (1) the use of comparable sales which were not, in fact, comparable to the subject property, (2) the use of but one approach to value, and (3) the failure to consider the income approach in light of the subject property's income producing capacity. We find that the trial court erred in denying Burks's motion for a new trial. Accordingly, we reverse and remand for a new trial.
¶ 22. THE JUDGMENT OF THE WINSTON COUNTY SPECIAL COURT OF EMINENT DOMAIN IS REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.
NOTES
[1] Also located on the 1.24 acres, were four gasoline tanks and dispensers covered by a metal canopy, a concrete retaining wall, and billboard structure. These improvements were not owned by Burks.
[2] Of this $92,456, Burks's interest represented $62,897; the remaining $29,559 was allocated to the other defendants in the action.
[3] He assigned a depreciated value of (1) $56,257 to the convenience store and the covered porch, (2) $1,680 to the gravel used to form the parking lot and driveways, (3) $60,913 to Burks's home, (4) $4,447 to the metal canopy, (5) $2,649 to the gas tanks, (6) $463 to the concrete retaining wall, and (7) $22,000 to the billboard structure.
[4] Under the three approaches, Crook arrived at a before value of (1) $407,000 under the income approach, (2) $390,000 under the sales comparison approach, and (3) $314,000 under the cost approach.
[5] The verdict was apportioned among the defendants as follows: $132,500 to Burks for the value of real property and improvements belonging to her, and $17,500 to Fair Propane Gas Systems Inc., for the improvements belonging to it.
[6] We are mindful that Eslava, in reaching an estimate under the cost approach, used the sales comparison approach for the limited purpose of estimating the value of the underlying land as if vacant. However, we do not credit this limited use as a determination of value based on the sales comparison approach. In fact, Eslava stated that the sales comparison approach would not be applicable to value Burks's property.