# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-SA-01181-SCT

*MISSISSIPPI TRANSPORTATION COMMISSION*

*v.*

*UNITED ASSETS, LLC*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/30/2014 |
| TRIAL JUDGE: | HON. MICHAEL W. McPHAIL |
| TRIAL COURT ATTORNEYS: | JACK H. PITTMAN |
| | CHRISTOPHER M. HOWDESHELL |
| | MARK D. HERBERT |
| | SABRINA RUFFIN |
| COURT FROM WHICH APPEALED: | FORREST COUNTY SPECIAL COURT OF EMINENT DOMAIN |
| ATTORNEYS FOR APPELLANT: | CHRISTOPHER M. HOWDESHELL |
| | JACK H. PITTMAN |
| ATTORNEYS FOR APPELLEE: | LISA A. REPPETO |
| | MARK D. HERBERT |
| NATURE OF THE CASE: | CIVIL - EMINENT DOMAIN |
| DISPOSITION: | AFFIRMED - 02/11/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DICKINSON, P.J., LAMAR AND MAXWELL, JJ.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1. The Mississippi Transportation Commission (MTC) filed a complaint to condemn 11.5 acres of highway frontage property owned by United Assets, LLC, leaving United Assets with 12.02 acres. After a trial in the Forrest County Special Court of Eminent Domain, the jury awarded $1,620,060.66 as just compensation for the taking. MTC appeals,

arguing that the trial court erred when it allowed United Assets' appraiser to testify to the value of the remaining property without supporting market data, and when it denied its motion for judgment notwithstanding the verdict (JNOV) and/or a new trial. We find that MTC's failure to object contemporaneously to the admission of the appraiser's testimony waived the issue, and we therefore affirm.

## FACTS

¶2. United Assets owned 23.52 acres at the northeast intersection of Evelyn Gandy Parkway (Highway 42) and Interstate 59 in Forrest County. The property was accessible by a frontage road along Evelyn Gandy Parkway and was unimproved except for an abandoned house and shed. MTC filed a complaint to condemn 11.5 acres of the property, including all of the highway frontage.

¶3. The taking was part of a two-phase construction project to facilitate faster traffic flow at the intersection. Phase 1 included building a new access ramp on the taken property leading from Evelyn Gandy Parkway to I-59. Phase 2 included building a flyover that would span the length of the taken property and block the visibility of the remainder from the highways. Paul Purvis, a project engineer for the Mississippi Department of Transportation (MDOT), testified that Phase 1 construction was scheduled to begin in 2018, and that the timing of Phase 2 was not definite.

¶4. The taking rendered the remaining 12.02 acres landlocked. At the time of the trial, United Assets had been using a gravel road that crossed MTC's no-access line to get to the property. But United Assets had no permit to cross the no-access line. Purvis testified that,

2

if United Assets applied for a temporary access permit, the permit application might or might not be approved. As of the trial date, United Assets had not applied for a permit. Purvis further testified that the construction plans called for a permanent access road that would not be constructed until Phase 1, in 2018. MTC's expert appraiser admitted that construction of this permanent access road could be delayed or canceled.

¶5.    Because the parties could not agree on just compensation for the taking, a jury determined just compensation, calculated as the difference between the property's fair market value before the taking and the remainder's fair market value after the taking. *See **Miss. State Highway Comm'n v. Hillman***, 189 Miss. 850, 198 So. 565 (1940). The jury viewed the property during the trial.

¶6.    Jonathan Null, MTC's expert real estate appraiser, testified that, before the taking, the highest and best use of the property was for commercial development, due to its location off the I-59 exit ramp. Null testified that he considered three valuation approaches: the sales comparison approach, the income approach, and the cost approach. He determined that the sales comparison approach was most appropriate to value the property before and after the taking. Null explained that, when taking the sales comparison approach, the appraiser arrives at a value using sales of real estate similar to the subject property, making adjustments as needed for differences between each sale and the subject property. Using the sales comparison approach, Null arrived at a before-taking value of $60,000 per acre after adjustments, with a total before-taking value of $1,411,200.

¶7. Null testified that the highest and best use of the property remained the same after the taking, because the property still was adjacent to the interstate and because there was little change in the access to the property. He found the remainder fully viable for commercial development, but he admitted that his appraisal assumed that United Assets had legal access to the remainder using the gravel road. Using the same comparable sales, he found that the per-acre value after the taking remained $60,000 per acre. Null testified that, because United Assets had lost five hundred feet of highway frontage along the frontage road, he subtracted from the value $75,000 to build a service road, $30,780 to compensate for the land used to build the road, and $30,255 to pave the gravel road to provide paved temporary access. The new service road would not front Evelyn Gandy Parkway or I-59. Null testified that the after-taking value was $585,165, and that the difference in the before and after values was $826,035.

¶8. Louis Tortorich, a managing member of United Assets, testified that it had purchased the property in 2006 for $1,355,000. He stated that United Assets had invested in the property because of the potential for high-end commercial development, such as fast-food chains, hotels, and "big-box" stores. Tortorich testified that, now, "no one in their right mind" would want to develop the remaining land in that manner.

¶9. John Stribling, a commercial real estate broker, testified as an expert in commercial real estate development about highest and best use. Stribling testified that access and visibility are vital to a commercial site, and that the property before the taking was a good site for commercial development, with five hundred feet of frontage along Evelyn Gandy

4

Parkway and five hundred feet of frontage on I-59. Stribling testified that the taken portion of the property was the most desirable portion. He stated that the remainder would not be viable for commercial development because it lies three to four hundred feet away from Evelyn Gandy Parkway, and the planned flyover would block visibility from highway traffic.

¶10.    Joe Parker appraised the property before and after the taking for United Assets. He also considered the three approaches to valuation and found that the sales comparison approach was most appropriate for the property. Parker testified that, before the taking, the property was first-off-the-interstate property with good visibility. He found that, before the taking, the highest and best use was high-end, mixed-use commercial development. He stated that the property would have been appropriate for fast-food restaurants, convenience stores, and lodging facilities, with a large retail store in the back. After adjusting the comparable sales, he reached a value of $2.25 per square foot, or $2,305,195, from which he subtracted $20,000 to demolish the house and shed, for a final value of $2,285,195 before the taking.

¶11.    The trial court ruled on the admissibility of each appraiser's comparable sales outside the presence of the jury. It excluded several of the comparable sales on which Null had relied and on which Parker had relied to reach his before-taking value. But the trial court excluded *all* of the comparable sales supporting Parker's after-taking value. Parker then testified that the taking of the highway frontage and access eliminated the possibility of commercial use, and that the highest and best use of the remainder would be to hold it for future development once the permanent access road has been constructed. Parker also testified that the after-taking value was zero. After hearing all the testimony, the jury found

that just compensation for the taking was $1,620,060.66. MTC filed a motion for JNOV or a new trial, which the trial court denied.

¶12. As mentioned above, MTC has now appealed and raises two issues. United Assets has cross-appealed, but it specifically requests that this Court take up its cross-appeal only if it finds that a new trial is warranted.

## DISCUSSION

**1. MTC's failure to object contemporaneously waived its opportunity to argue on appeal that Parker's testimony was erroneously admitted.**

¶13. MTC argues that, because the trial court excluded all of Parker's after-taking comparables, it should not have allowed Parker to testify that the after-taking value was zero. It argues that the admission of Parker's testimony contravened this Court's decision in *Gulf South Pipeline Co., L.P. v. Pitre*, 35 So. 3d 494, 499 (Miss. 2010), where this Court held that an appraiser's valuation testimony was unreliable and inadmissible because the appraiser had not followed a recognized method or procedure accepted in the appraisal industry. United Assets counters that this issue is procedurally barred because MTC did not make a contemporaneous objection to this testimony.

¶14. It is true that MTC did not object when the testimony first was presented to the jury. During the voir dire of the after-taking comparables outside the presence of the jury, Parker stated that the property was essentially worthless in the after condition due to the lack of access, and that it only could be held for future use. Once the after-taking comparables were excluded, Parker testified before the jury that, due to the lack of access, the remainder had

6

"inconsequential value" and was "virtually worthless." Parker also testified that he "[didn't] see any buyers coming in there and buying [the property] today at any price, period." MTC made no objection. The trial court then excused the jury to allow United Assets to proffer the excluded comparables.

¶15.   When the trial recommenced, United Assets again asked Parker if the remainder had any significant value, and MTC objected for the first time. The trial court found that Parker already had testified that the remainder had no value. MTC complained that, because the after-taking comparables had been excluded, Parker could not testify about his after-taking appraisal. The trial court allowed voir dire on Parker's ability to testify that the property had no value, and Parker stated that, based on the testimony so far and the information furnished to him, he was able to render an opinion that the value was zero. The trial court then permitted Parker to testify before the jury that the property had zero value after the taking.

¶16.   If no contemporaneous objection is made, any error is waived. *InTown Lessee Assoc., LLC v. Howard*, 67 So. 3d 711, 719 (Miss. 2011) (citing M.R.E. 103(a)(1)). A party must object "as soon as it appears that the evidence is objectionable, or as soon as it could reasonably have been known to the objecting party, unless some special reason makes a postponement desirable for him which is not unfair to the proponent of the evidence." *Sumner v. State*, 316 So. 2d 926, 927 (Miss. 1975). And "[w]hile the trial judge has discretion with regard to when and how to decide whether an expert's testimony is sufficiently reliable to be heard by a jury, this does not eliminate the requirement that the

party opposing the evidence make a timely objection to its being admitted into evidence." ***Hyundai Motor v. Applewhite***, 53 So. 3d 749, 755 (Miss. 2011).

¶17.    MTC admits that it did not object contemporaneously when Parker testified that the property had inconsequential value and was virtually worthless. But MTC explains that it did not object then because Parker's testimony concerned only the highest and best use of the property, and he had opined that the remainder had no *commercial* value, not zero value. Because this testimony on commercial value was cumulative of Tortorich's and Stribling's testimony, MTC argues, it did not object. MTC contends that its objection properly came once Parker testified that the property had no value for any purpose.

¶18.    We are not convinced.  After careful review of the transcript, we find that MTC did not object as soon as it "reasonably appeared the evidence was objectionable."  Contrary to MTC's argument, Parker's initial testimony about the remainder was not limited to highest and best use.  Parker provided several opinions on value: that the remainder had "inconsequential value," that "[it was] virtually worthless," that he saw no reasonable potential commercial value, and that he could not see "any buyers coming in there and buying [the property] today at any price, period."  Further, Parker discussed both commercial *and* residential use, contrary to MTC's assertions.  Parker also had stated during voir dire that the remainder was essentially worthless, so MTC was on notice of the content of his testimony before the jury would be.  But MTC did not object until *after* Parker had testified several times that the remainder had no value.  We find that MTC waived any error in the admission of Parker's valuation testimony by failing to object contemporaneously.

8

¶19. Notwithstanding MTC's waiver of this issue, we also find that any error in the admission of Parker's testimony was harmless and does not warrant a new trial. Error may not be predicated on the admission of evidence unless "a substantial right of the party" is affected. M.R.E. 103(a). "This Court has a long-standing history of not disturbing jury verdicts in eminent domain proceedings, especially when the jury has viewed the property being taken and the evidence in the record supports the jury's finding." *Trowbridge Partners, L.P. v. Miss. Transp. Comm'n*, 954 So. 2d 935, 943 (Miss. 2007) (citing *Miss. Highway Comm'n v. Havard*, 508 So. 2d 1099, 1105 (Miss. 1987)). Courts are "loathe to disturb a jury's eminent domain award where, as here, the jury has personally viewed the premises." *Crocker v. Miss. State Highway Comm'n*, 534 So. 2d 549, 554 (Miss. 1988).

¶20. In fact, "where the jury has viewed the property being taken, any substantial evidence in the record supporting the jury's damage assessment will preclude reversal." *Id.* The jury is not required to accept the exact figures given by the appraisers. *Miss. State Highway Comm'n v. Franklin Cty. Timber Co.*, 488 So. 2d 782, 787 (Miss. 1986) (quoting *Miss. State Highway Comm'n v. Terry*, 288 So. 2d 465, 466 (Miss. 1974)). And opinion testimony on value is not limited to qualified expert appraisers; other witnesses with "substantial familiarity with the fair market values of properties of the type in issue and a like familiarity with the property in issue" may so testify. *Franklin Timber*, 488 So. 2d at 786.

¶21. The jury's verdict here of $1,620,060.66 was supported by substantial evidence. The jury viewed the property. All the witnesses questioned agreed that the highest and best use of the property before the taking was for commercial development. Testimony established

9

that, after the taking, the remainder would have no access at least until 2018. Tortorich and Stribling testified that the remainder had no commercial value, and Parker testified that its highest and best use would be to hold for future development.

¶22. Parker testified that the before-taking value was $2,285,195, and that the after-taking value was zero—so in essence, he testified that the just compensation due was $2,285,195. Null testified that the before-taking value was $1,411,200, and that the after-taking value was $585,165,[1] resulting in just compensation due of $826,035. The jury's verdict was between these two values. Also, United Assets' amended statement of values, which went unchallenged by MTC, stated an after-taking value of $30,050. So even if Parker had not been allowed to testify that the after-taking value was zero, he presumably would have testified that it was worth only $30,050 at most. In short, we find that, even if MTC properly had preserved the issue, any error in admitting Parker's testimony was harmless.

**2. The trial court did not err when he denied MTC's Motion for JNOV/New Trial.**

¶23. MTC argues that the trial court erred by denying its motion for a JNOV because the evidence was insufficient to support the verdict. It also argues that it is entitled to a new trial because the verdict was against the overwhelming weight of the evidence. We disagree.

¶24. "This Court applies a de novo standard of review to a trial court's denial of a judgment notwithstanding the verdict (JNOV)." **Adcock v. Miss. Transp. Comm'n**, 981 So. 2d 942, 948 (Miss. 2008) (citation omitted). "A motion for JNOV is a challenge to the legal

---

[1]And this value assumed that United Assets would have access.

sufficiency of the evidence, and this Court will affirm the denial of a JNOV if there is substantial evidence to support the verdict." *Id.* (citation omitted).

¶25. "The standard of review on a motion for a new trial is abuse of discretion." *Johnson v. St. Dominics-Jackson Mem'l Hosp.*, 967 So. 2d 20, 23 (Miss. 2007) (citation omitted). "The weight of the evidence, rather than the legal sufficiency, is tested in a motion for a new trial," and this Court "'will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.'" *Id.* (citation omitted).

¶26. Here, MTC's post-trial and appellate arguments rest wholly on the premise that Parker's testimony was unreliable and should not have been admitted. And because Parker's opinion as to the after-taking value was unsupported and therefore unreliable, MTC argues, the jury's verdict was "based upon insufficient evidence." MTC argues that the only legally sufficient evidence before the jury was Null's valuation of $826,035. But as discussed above, MTC has waived its argument that Parker's testimony was improper. As such, we find that sufficient evidence existed to support the jury's verdict, and that it was not against the overwhelming weight of the evidence.

### United Assets' Cross-Appeal

¶27. As mentioned above, United Assets raises two issues on cross-appeal. But United Assets specifically requests that this Court affirm the verdict, and that it consider its cross-appeal only if it decides to reverse and remand for a new trial. So because we find no reversible error, we do not consider United Assets' cross-appeal.

**CONCLUSION**

¶28.    We find that MTC waived any challenge to the admission of Parker's after-taking valuation when it failed to object contemporaneously.  We also find that any error in the admission of Parker's testimony was harmless.  And we do not consider United Assets' cross-appeal, at its request.  We therefore affirm the judgment of the Forrest County Special Court of Eminent Domain.

¶29.    **AFFIRMED.**

**WALLER, C.J., DICKINSON, P.J., KITCHENS, KING, COLEMAN AND MAXWELL, JJ., CONCUR.  RANDOLPH, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**